UNITED STATES DISTRICT COURT
EASTERN DISTRICT of TENNESSEE
at WINCHESTER

UNITED STATES OF AMERICA

v.  Case No. 4:19-CR-20

ANTHONY GLENN BEAN
ANTHONY DOYLE FRANKLIN BEAN

### GOVERNMENT'S NOTICE AND MOTION TO INTRODUCE EVIDENCE UNDER FEDERAL RULE OF EVIDENCE 404(b) AND RESPONSE TO DEFENDANTS' MOTIONS *IN LIMINE*

The United States of America, by and through the undersigned attorneys, respectfully moves this Court to allow the introduction of evidence that the defendants bragged about using excessive force, discouraged other officers from recording or reporting excessive force, and used excessive force during incidents other than those described in the Indictment. Such evidence is intrinsic to the charged conduct, and it is also admissible as other-acts evidence under Federal Rule of Evidence 404(b). Under both theories, the evidence is highly probative and not unduly prejudicial. The United States accordingly notices its intent to introduce such evidence pursuant to Rule 404(b) and opposes the defendants' motions *in limine* to exclude this evidence. *See* Dkt. 25 and 26.

The five-count indictment in this case charges that defendants Anthony Glenn Bean ("Tony Bean") and Anthony Doyle Franklin Bean ("T.J. Bean"), while acting under color of law, used excessive force against arrestees, thereby violating their civil rights. Specifically, each defendant hit a restrained or otherwise compliant arrestee in apparent retaliation for the arrestee's earlier conduct. Each defendant then failed to report his use(s) of force. The government seeks to introduce evidence that, on other occasions, the defendants discouraged other law enforcement

1

officers from turning on their body-worn cameras, discouraged officers from reporting excessive force, and said that assaulting compliant arrestees was the "Grundy County Way." The government also seeks to introduce evidence that, on several other occasions, each defendant engaged in similar conduct by using excessive force against arrestees in retaliation for earlier conduct and then failing to report their uses of force.

As explained more fully below, the proffered evidence is admissible, first, because witnesses in the case will testify that the defendants' prior acts of violence caused them to fear retaliation and thus influenced their conduct on the scene of the December 30, 2017, arrest and afterward. Second, this evidence should also be admitted under Rule 404(b) because it is strongly probative of the defendants' intent and identity in the charged offenses. Undersigned counsel has provided defense counsel with discovery related to these incidents, and the government recognizes its continuing obligation to turn over any materials that might be obtained in advance of trial. Trial in this matter is currently set for January 14, 2020.

## I. Factual Background

### A. The Charged Offenses

Counts One and Two of the Indictment charge that on December 30, 2017, defendant Tony Bean twice assaulted arrestee F.M. in violation of his civil rights, while Count Three alleges that on that date, defendant T.J. Bean once assaulted F.M. in violation of his civil rights. On that date, law enforcement officers, including Tony and T.J. Bean, arrested F.M. after a vehicle pursuit. Tony Bean's wife was present, although she is not a law enforcement officer. The pursuit ended when F.M. lost control of his vehicle and struck defendant Tony Bean's vehicle. Several officers, including the defendants, then arrested F.M. According to witnesses, Tony Bean repeatedly and unnecessarily punched F.M. in the face while F.M. was complying with officer commands. While Tony Bean was punching F.M., he yelled words to the effect, "You hit me and you almost killed my [expletive] wife."

2

F.M. was then handcuffed and placed in a law enforcement vehicle. According to witnesses, T.J. Bean then opened the door of the vehicle and repeatedly punched F.M. in the face while F.M. was seated, handcuffed, and compliant. While T.J. Bean punched F.M., he admonished F.M. about hitting his "daddy" with his vehicle. Tony Bean later bragged about his assault of F.M., commenting that he injured his hand when he punched F.M. Neither Tony nor T.J. Bean reported these uses of force.

Counts Four and Five of the Indictment charge that on August 10, 2014, while defendant Tony Bean was the Chief of the Tracy City Police Department, he twice assaulted arrestee C.G. in violation of his civil rights. On that date, Tony Bean repeatedly punched arrestee C.G. in the face while he was handcuffed. Tony Bean's wife was also present on the scene of this arrest. According to law enforcement officer-witnesses, Tony Bean punched C.G. after C.G. called Bean's wife an obscene name; Tony Bean berated C.G., saying words to the effect, "You're not going to talk to my wife like that." Tony Bean did not report using any force against C.G.

   B.  *Other-Acts Evidence*

The government anticipates that the defendants will raise the defenses, first, that no one on scene used excessive force against the named victims; second, that if there were excessive force, that force was used by someone other than the defendants; and third, that if any defendant did use excessive force, he did not do so willfully, as 18 U.S.C. § 242 requires. The government intends to offer evidence, first, that on other occasions, the defendants told law enforcement witnesses in the case-in-chief that it was the "Grundy County Way" to hit handcuffed arrestees and discouraged them from turning on their body-worn camera videos or reporting uses of force. Second, the government intends to offer evidence that, on three other occasions, defendant Tony Bean used excessive force against an arrestee in retaliation after a pursuit or other resistance, and, that on two separate occasions, defendant T.J. Bean used excessive force against an arrestee in retaliation after a pursuit. These other incidents are as follows.

3

First, the government intends to offer evidence of the April 8, 2015, arrest of K.F. and T.F. by defendant Tony Bean. On that date, law enforcement officers arrested K.F. and T.F. after a vehicle pursuit that ended when the arrestees' vehicle collided with Bean's vehicle. According to witnesses, after the vehicles stopped, Tony Bean hit K.F. in the face with a gun or Maglite flashlight while K.F. was sitting in the driver's seat of his vehicle with his hands up. Tony Bean said words to the effect, "How did that steering wheel feel?" Medical records reflect that K.F. suffered broken bones in his face as a result. Body-worn camera footage reflects that after K.F. was handcuffed and seated on the ground, awaiting transport, defendant Tony Bean berated K.F. for damaging his vehicle, warned K.F. that he would kick his "jaw off," and threatened to beat K.F.'s "brains out." Tony Bean did not report this use of force. Bean later bragged in front of a witness that the sheriff would need to buy him a new gun because he had damaged the weapon by hitting K.F. with it. When he was voluntarily interviewed by the Federal Bureau of Investigation (FBI), Tony Bean denied using force against K.F.

Second, the government intends to offer evidence of the May 20, 2016, arrest of P.F. by defendant Tony Bean. After a foot pursuit, Tony Bean repeatedly punched P.F. in the head while P.F. was handcuffed behind his back and lying face-down on the ground. Tony Bean berated P.F. During this assault, Bean was wearing leather gloves he regularly referred to as his "tune-up" gloves. According to a witness, Bean said that he regularly wore these gloves when he planned to "tune up," or assault, an arrestee.

Third, the government intends to offer evidence of the July 30, 2017, arrest of M.M. by both defendants. Prior to the arrest of M.M., defendant Tony Bean instructed at least one other officer not to turn on his body-worn camera because he planned a "tune-up," which that officer understood to mean a beating. Additionally, and prior to the arrest, defendant Tony Bean put on his "tune-up gloves." Officers arrested M.M. in his home. M.M. attempted to flee. Defendant

4

T.J. Bean said words to the effect, "Let me have him- I'll teach him to run from me," and punched M.M. unnecessarily. Part of this arrest is captured by a law enforcement officer's body-worn camera footage. Neither Tony Bean nor T.J. Bean reported this use of force.

Fourth, the government intends to offer evidence of the August 8, 2017, arrest of P.P. by defendant Tony Bean. During the arrest, and while defendant Tony Bean had P.P. restrained, face-down, on the ground, Bean said words to the effect, "I'll teach you to sue us" and struck P.P. in the head, causing injury to P.P.

Finally, the government intends to offer evidence of the April 23, 2019, arrest of O.B. by defendant T.J. Bean. After a vehicle pursuit, O.B. was standing next to his vehicle when defendant T.J. Bean tased him in the face, neck, and upper chest. T.J. Bean then told O.B. to "keep [his] mouth shut" about what had happened. O.B. sustained cuts on his face and jaw.

## II. Analysis

### A. *Some of the proffered evidence is admissible on non-404(b) grounds.*

Evidence that the defendants discouraged officer-witnesses in the present case from recording or reporting the defendants' excessive force and told them that excessive force is the "Grundy County Way" is admissible because it is intrinsic to the witnesses' testimony. These witnesses will testify that these statements affected their conduct on the scene of the December 30, 2017, incident and afterward. This evidence accordingly "forms an integral part of [] witness[es'] testimony" and "completes the story of the charged offense." *United States v. Gibbs*, 797 F.3d 416, 423 (6th Cir. 2015) (explaining the "intrinsic evidence" exception to Rule 404(b)); *see also, e.g., United States v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000) ("Typically, such [proper background evidence] . . . forms an integral part of a witness's testimony, or completes the story of the charged offense.").

The government will call several law enforcement officers to testify that, on December 30,

2017, they saw each defendant punch arrestee F.M. in the face or head unnecessarily. These law enforcement witnesses will explain that their decisions about whether and when to report the defendants' misconduct was influenced by the defendants' instructions not to record or report excessive force on other occasions and the defendants' expressed intent to use excessive force on other occasions. These witnesses should be allowed to testify to their previous exposure to the defendants' efforts to perpetrate and conceal excessive force, because it completes their account of their conduct on scene and after the charged incidents. *See generally Old Chief v. United States*, 519 U.S. 172, 188 (1997) (explaining danger that jurors may inappropriately draw negative inferences against a party that is unable to provide context for important evidence). Such testimony does not implicate Rule 404(b) and is, instead, relevant evidence that may be introduced, subject only to the restrictions of Rule 403, discussed in detail below. *See United States v. Mandoka*, 869 F.3d 448, 458 (6th Cir. 2017) (upholding admission of other-acts evidence to explain victim's failure to report defendant's conduct); *United States v. Fields,* 483 F.3d 313, 359 (5th Cir. 2007) (same).

        *B. The evidence is admissible pursuant to 404(b) as evidence of intent and identity.*

The proffered evidence is separately admissible as other-acts evidence to show intent and identity and should also be admitted for that purpose. Evidence of a defendant's "other crimes, wrongs, or acts" is admissible for purposes other than propensity, "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed. R. Evid. 404(b). As the Sixth Circuit has repeatedly observed, Rule 404(b) is "a rule of inclusion rather than exclusion, since only one use is forbidden and several permissible uses of such evidence are identified." *United States v. Blankenship*, 775 F.2d 735, 739 (6th Cir. 1985); *see also, e.g.*, *United States v. LaVictor*, 848 F.3d 428, 446 (6th Cir. 2017) (holding that Rule 404(b) is a "rule of inclusion

6

rather than exclusion"). In fact, the Rule "prohibits *only* the introduction of acts that are offered to show criminal propensity or a conformity with past criminal activity. If the evidence has an independent purpose, Rule 404(b) does not prohibit its admission." *United States v. Childress*, 12 F. App'x 272, 275 (6th Cir. 2001) (citation omitted) (emphasis added); *see also United States v. Eckhardt*, 466 F.3d 938, 946 (11th Cir. 2006) ("[Rule] 404(b) is a rule of inclusion, and accordingly 404(b) evidence, like other relevant evidence, should not be excluded when it is central to the prosecution's case.") (internal alterations).

To admit evidence under Rule 404(b), the Court must: "(1) make a preliminary determination that enough evidence exists that the prior act actually occurred; (2) determine whether the other acts evidence is being offered for a proper purpose under Rule 404(b); and (3) determine whether the other acts evidence is more prejudicial than probative under Federal Rule of Evidence 403." *United States v. Ramer*, 883 F.3d 659, 669 (6th Cir.), *cert. denied sub nom. Westine v. United States*, 139 S. Ct. 111 (2018), *reh'g denied*, 139 S. Ct. 1242 (2019).

> 1. *The evidence is sufficient to support a finding that the defendants committed the other acts.*

As described below, the government's evidence meets or exceeds each of the requirements laid out by the Sixth Circuit in *Ramer*. First, ample evidence—including testimony from victims, testimony from law enforcement officers, medical records, and body-worn camera footage—would allow a reasonable jury to conclude that the defendants committed the described acts. Second, the other-acts evidence is offered for at least two proper purposes under the Rule. Finally, the evidence is highly probative of the defendants' intent and identity, while the risk of confusion or unfair prejudice is minimal, such that any prejudice the evidence causes does not outweigh its substantial probative value.

The government will offer the testimony of witnesses, including victims and law

enforcement officers; body-worn camera footage; and medical records in support of the proffered 404(b) evidence.[1] This evidence is sufficient for a reasonable jury to conclude that the defendants committed the alleged acts and thus satisfies the first element. *See United States v. Carney*, 387 F.3d 436, 452 (6th Cir. 2004) ("[T]he government need not prove probative 'other acts' beyond a reasonable doubt; rather, that proof must merely be sufficiently compelling such that the jury can reasonably conclude that the act occurred and that the defendant was the actor.") (internal quotation marks omitted).

With regard to the 2015 K.F. arrest, the 404(b) evidence consists of testimony from victim K.F. and his wife, T.F., one law enforcement witness and one emergency response witness who heard defendant Tony Bean bragging about the incident, a law enforcement officer whose body-worn camera footage reflects Tony Bean threatening K.F. after his arrest, and a medical-records custodian.

With regard to the May 20, 2016, incident, the evidence regarding the P.F. arrest consists of testimony from two law enforcement officers who witnessed the assault.

With regard to the July 30, 2017, arrest of M.M., the evidence will consist of testimony from a law enforcement officer who witnessed defendant T.J. Bean punch the arrestee and who witnessed defendant Tony Bean's admission that he planned to "tune up" the arrestee. The evidence also includes that officer-witness's body-worn camera footage of part of the arrest.

With regard to the August 8, 2017, arrest of P.P., the evidence will consist of testimony from a law enforcement officer witness who saw defendant Tony Bean strike the arrestee.

Finally, and with regard to the April 23, 2019, arrest of O.B., the evidence will consist of

---

[1] The government's evidence is described in detail in this motion, but if the 404(b) evidence is admitted, the government anticipates that it would streamline its presentation of that evidence. The government anticipates that it would present much of the proffered evidence through the testimony of witnesses who will already be called in the government's case in chief.

testimony from O.B., body-worn camera footage, and a medical-records custodian.

This evidence, which includes the testimony of law enforcement officers, is sufficient for a reasonable jury to find that each defendant committed the respective assaults. Accordingly, this evidence is admissible pursuant to Rule 404(b). *See, e.g.*, *United States v. Hardy*, 643 F.3d 143, 150 (6th Cir. 2011) (finding that testimony of two drug purchasers was sufficient for reasonable jury to conclude that 404(b) acts had occurred); *United States v. Johnson*, 458 F. App'x 464, 470 (6th Cir. 2012) ("[T]he testimony of a single witness is sufficient for a reasonable jury to conclude that the defendant committed the prior acts, even where the witness is less than completely reliable.").

### 2. *The evidence is offered for proper 404(b) purposes.*

The other-acts evidence that (1) on multiple occasions, defendant Tony Bean used excessive force against a compliant arrestee in apparent retaliation after a pursuit or other resistance, and (2) on multiple occasions, defendant T.J. Bean used excessive force against a compliant arrestee in apparent retaliation after a vehicle pursuit, and that both defendants attempted to cover up their bad acts through action or omission, is highly probative of the specific intent of each of the defendants in the charged incidents, because the incidents are substantially similar and occurred reasonably close in time to the charged conduct. Accordingly, the evidence satisfies this element under Sixth Circuit precedent. *See Hardy*, 643 F.3d at 151 ("To determine if evidence of other acts is probative of intent, we look to whether the evidence relates to conduct that is substantially similar and reasonably near in time to the specific intent offense at issue.") (internal quotation marks omitted); *Carney*, 387 F.3d at 451 (finding that 404(b) evidence was admissible where it consisted of "valuable probative instances of additional similar transactions").

In order to prove that each defendant violated 18 U.S.C. § 242 when each assaulted a compliant arrestee while acting under color of law, the United States must prove that each

defendant "willfully" deprived the victims of a right secured or protected by the Constitution. Willfulness requires that the defendant possessed the specific intent to deprive the victim of a constitutional or statutory right. *See Screws v. United States*, 325 U.S. 91, 101 (1945); *United States v. Lanier*, 520 U.S. 259, 264 (1997). In other words, the government must prove that each defendant knew that using excessive force was wrong and that he chose to use excessive force anyway. The Sixth Circuit has explained that in cases in which the government must prove the defendants' specific criminal intent, whether because of the elements of the charged crime or because of a proffered defense, "other acts evidence may be introduced under Rule 404(b)." *United States v. Johnson*, 27 F.3d 1186, 1192 (6th Cir. 1994); *see also LaVictor*, 848 F.3d at 446 ("This Court has previously held that the admission of other acts evidence is permitted to show intent when the defendant is charged with a crime containing a specific intent element"). Such evidence is admissible regardless of which defenses are raised. *Johnson*, 27 F.3d at 1192 ("[W]here the crime charged is one requiring specific intent, the prosecutor may use 404(b) evidence to prove that the defendant acted with the specific intent notwithstanding any defense the defendant might raise.").

In each of the 404(b) incidents, Tony Bean or T.J. Bean assaulted a compliant, recently arrested person who had previously led them on a chase or otherwise angered them. Accordingly, the acts are substantially similar and should be admitted. *Hardy*, 643 F.3d at 151. (Defendant Tony Bean concedes this point. *See* Dkt. 25 at 3.) Each of the 404(b) assaults also took place within a few years the two charged incidents, well within the reasonable temporal proximity contemplated by the Sixth Circuit.[2] *See, e.g.*, *United States v. Jones*, 403 F.3d 817, 821 (6th Cir. 2005) ("Cases from this and other circuits have in fact affirmed the use of testimony relating to

---

[2] It is irrelevant that some of the 404(b) incidents occurred after the charged assaults, because "Rule 404(b) expressly permits the admission of relevant 'other acts,' not merely 'prior acts.'" *Carney*, 387 F.3d at 452.

10

prior acts dating back much further than three years.").

Additionally, in the M.M. and P.F. incidents, Tony Bean evinced an intent to assault the arrestee and to cover up his conduct, while in the O.B. incident, T.J. Bean also attempted to cover up his conduct by instructing the arrestee to keep his mouth shut. In several of the incidents, the defendants made statements suggesting they were acting in retaliation. The defendants failed to report their uses of force in all the incidents. This conduct demonstrates that the defendants knew that using excessive force was wrong but chose to do it anyway. Federal circuit courts have upheld admission of such other acts in § 242 excessive force cases to prove that a defendant acted willfully. *See*, *e.g.*, *United States v. Cowden*, 882 F.3d 464, 471–72 (4th Cir. 2018); *United States v. Boone*, 828 F.3d 705, 711 (8th Cir. 2016); *United States v. Brugman*, 364 F.3d 613, 620 (5th Cir. 2004); *United States v. Mohr,* 318 F.3d 613, 619 (4th Cir. 2003)*; United States v. Rodella,* 804 F.3d 1317, 1335 (10th Cir. 2015).

The other-acts evidence is also relevant to proving the defendants' identity. *See United States v. Johnson*, 27 F.3d 1186, 1194 (6th Cir. 1994) ("In cases in which the identity of the perpetrator of the crime charged is in issue, evidence that the defendant committed other acts utilizing the same *modus operandi* or method of operation as was employed by the perpetrator of the crime charged, is admissible as tending to prove that the defendant committed the crime charged."). The United States anticipates that one or both defendants will argue that a law enforcement officer other than themselves caused victim C.G.'s injuries or victim F.M.'s injuries through the use of force. The fact that each defendant has, on multiple occasions, punched a handcuffed or otherwise compliant arrestee in retaliation after a pursuit, made statements about retaliation or revenge, and failed to report any use of force is probative of identity because it "establishe[s] that they engaged in similar acts during the same time frame," making it more likely that the defendants, rather than some other law enforcement officer, used excessive force. *United*

11

*States v. Johnson*, 458 F. App'x 464, 470 (6th Cir. 2012); *see also United States v. Thomas*, 74 F.3d 676, 679 (6th Cir. 1996) ("Since the evidence about the uncharged [] transactions involved the same type of conduct and occurred during the same time frame and in the same location as the offense charged, it was highly probative on the disputed issue of identity."), *abrogated on other grounds by Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 143 (1997).

### C. The probative value of the evidence outweighs any minimal possibility of confusion or unfair prejudice.

Finally, and under either theory of admissibility, the highly probative nature of the evidence and the minimal possibility of unfair prejudice favors admission. "Pursuant to Rule 403, a prior bad act that complies with Rule 404(b) is admissible unless 'its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.'" *United States v. Love*, 254 F. App'x 511, 517 (6th Cir. 2007), *aff'd*, 550 F. App'x 286 (6th Cir. 2014) (quoting Fed. R. Evid. 403). "Unfair prejudice" means "the undue tendency to suggest a decision based on improper considerations; it does *not* mean the damage to a defendant's case that results from legitimate probative force of the evidence." *United States v. Bilderbeck*, 163 F.3d 971, 978 (6th Cir. 1999) (emphasis added).

The proffered evidence is highly probative. First, both the intrinsic evidence and the other-acts evidence is highly probative of the defendants' consciousness of guilt, because it shows that they sought to conceal their uses of excessive force. The Sixth Circuit has upheld the admission of similar other-acts evidence under 404(b) for this purpose. *Cf., e.g., United States v. Poulsen*, 655 F.3d 492, 508–09 (6th Cir. 2011) ("[E]vidence of witness tampering was admissible as an 'other purpose' under Rule 404(b) because it tends to establish consciousness of guilt without any inference as to the character of the spoliator.") (internal quotation marks omitted); *United States*

12

*v. Snyder*, No. 18-4144, 2019 WL 4512659, at *8 (6th Cir. Sept. 19, 2019) ("Evidence tampering is potentially admissible as a prior bad act under Rule 404(b), as long as it is offered to show consciousness of guilt and not as character evidence.") (internal quotation marks omitted).

Second, the other-acts evidence is highly probative because each of the other incidents bears a striking resemblance to the charged conduct. Other-acts evidence that is "markedly similar" to evidence of the charged acts has "enhance[d]" probative value. *United States v. Seymour*, 468 F.3d 378, 385 (6th Cir. 2006). The other-acts evidence is also highly probative because it is crucial to proving a key element of the government's case; namely, willfulness. "Extrinsic acts evidence may be critical to the establishment of the truth as to a disputed issue, especially when that issue involves the actor's state of mind and the only means of ascertaining that mental state is by drawing inferences from conduct." *Huddleston v. United States*, 485 U.S. 681, 685 (1988). The defendants' repeated use of a similar type of excessive force against arrestees after a chase, repeated failure to report that force, and repeated attempts to prevent others from reporting that force tend to show that the defendants willfully used excessive force in the charged cases despite their awareness that their actions were wrong.

Finally, the other-acts evidence is not unfairly prejudicial, because the defendants cannot show that the other-acts evidence offered in this case is the type of "unfairly inflammatory" evidence that "might have led the jury to convict [them] on an improper basis." *United States v. Mandoka*, 869 F.3d 448, 455 (6th Cir. 2017). Each defendant has argued that the admission of other-acts evidence is unfairly prejudicial. *See* Dkt. 25 at 2, Dkt. 26 at 1–2. These arguments are conclusory and unsupported by fact or law and may be denied on that basis alone. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones.") (internal punctuation omitted). More fundamentally, the other-acts evidence is not unduly prejudicial

because it is no more shocking than the charged conduct. The Sixth Circuit has repeatedly refused to find other-acts evidence unfairly prejudicial where the other acts are no more inflammatory than the charged conduct. *See, e.g.*, *Mandoka*, 869 F.3d at 455; *United States v. Rios*, 830 F.3d 403, 424 (6th Cir. 2016) (evidence of similar other-acts only "minimally" prejudicial because of similarity).[3]

Ultimately, the defendants have asked the court to deny the jury information about other incidents of excessive force the defendants have committed because they would rather the jury lack that context. But this evidence is highly relevant to the present case, because it demonstrates the defendants' intent and identity and because it deeply affected many of the law enforcement officers who witnessed the charged conduct. As the Sixth Circuit has observed, "[e]vidence that is prejudicial only in the sense that it paints the defendant in a bad light is not unfairly prejudicial pursuant to Rule 403." *United States v. Chambers*, 441 F.3d 438, 456 (6th Cir. 2006).

### III.   Conclusion

For the foregoing reasons, the United States respectfully moves the Court to grant this Motion and admit the above-described evidence.

Respectfully submitted,

ERIC S. DREIBAND
ASSISTANT ATTORNEY GENERAL

*s/ Kathryn E. Gilbert*
Kathryn E. Gilbert
Rebekah J. Bailey

---

[3] If the government's motion is granted, the government would propose a limiting instruction to further insulate against the already-minimal risk of unfair prejudice. *See, e.g.*, Sixth Circuit Pattern Instruction 7.13; *Love,* 254 F. App'x at 518 (noting that a limiting jury instruction reduces any risk of prejudice from other-acts evidence); *United States v. Knight*, No. 11-5897 (6th Cir. 2012) (holding that trial court's admission of 404(b) evidence was proper and noting that trial court minimized any risk of prejudice by repeatedly offering limiting instructions).

14

Trial Attorneys
Civil Rights Division, Criminal Section
U.S. Department of Justice
950 Pennsylvania Ave. NW
Washington, DC 20530
202-616-2430 phone
202-598-9607 fax
kathryn.gilbert@usdoj.gov

J. DOUGLAS OVERBEY
UNITED STATES ATTORNEY

*s/ James T. Brooks*
JAMES T. BROOKS, BPR #021822
Assistant United States Attorney
1110 Market Street, Suite 515
Chattanooga, Tennessee 37402
(423) 752-5140
James.Brooks@usdoj.gov