**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**at WINCHESTER**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| v. | ) | **Case No. 4:19-CR-20** |
| | ) | **Judge Mattice** |
| **ANTHONY GLENN BEAN** | ) | |
| **ANTHONY DOYLE FRANKLIN BEAN** | ) | |
| | ) | |

## UNITED STATES' OMNIBUS MOTION IN LIMINE

The United States of America, by and through undersigned counsel, files this omnibus

motion *in limine* to: (1) exclude any improper reference to or evidence of the victims' criminal

history character or bad acts; (2) exclude any improper reference to or evidence of the defendant's

character; (3) prohibit reference to equally available witnesses whom the parties decline to call to

testify at trial; (4) allow the government to introduce the defendant's prior out-of-court statements

and prohibit the defendant from introducing his own hearsay statements through other witnesses

or by eliciting them on cross examination of government witnesses.

## FACTUAL AND PROCEDURAL SUMMARY

The five-count indictment in this case charges that defendants Anthony Glenn Bean ("Tony

Bean") and Anthony Doyle Franklin Bean ("T.J. Bean"), while acting under color of law, used

excessive force against arrestees, thereby violating their civil rights. Tony Bean is T.J. Bean's

father, and both currently work for the Grundy County Sheriff's Office ("GCSO"). On August 10,

2014, while defendant Tony Bean was the Chief of the Tracy City Police Department ("TCPD"),

he repeatedly punched handcuffed arrestee C.G. in the face. Tony Bean's wife, who is not a law

enforcement officer, was present on the scene of this arrest. According to law enforcement officer-

witnesses, Tony Bean punched C.G. after C.G. called Bean's wife an obscene name. During his

assault, Tony Bean berated C.G., saying words to the effect, "You're not going to talk to my wife like that." Tony Bean did not report any use of force against C.G.

On December 30, 2017, defendants Tony Bean and T.J. Bean worked at the GCSO as the Chief Deputy and Sergeant, respectively. On that date, law enforcement officers, including defendants Tony Bean and T.J. Bean, arrested F.M. after a vehicle pursuit. Again, Tony Bean's wife was present. The pursuit ended when F.M. lost control of his vehicle and struck defendant Tony Bean's vehicle while it was parked on the side of the road. Several officers, including the defendants, then arrested F.M. According to law enforcement officers who participated in the arrest, Tony Bean repeatedly and unnecessarily punched F.M. in the face while F.M. was complying with officer commands. While Tony Bean was punching F.M., he yelled words to the effect, "You hit me and you almost killed my [expletive] wife." F.M. was then handcuffed and placed in a law enforcement vehicle for transport. According to officer-witnesses, T.J. Bean then opened the door of the vehicle and repeatedly punched F.M. in the face while F.M. was seated, handcuffed, and compliant. While T.J. Bean punched F.M., he admonished F.M. about hitting his "daddy" with his vehicle. Tony Bean later bragged about his assault of F.M., commenting that he had injured his hand when he punched F.M. Neither Tony nor T.J. Bean verbally reported these uses of force to their respective supervisors, neither defendant submitted a use of force report as required by policy, and since the incidents, neither defendant has come forward to claim that his force was justified.

Following the incident, defendants Tony Bean and defendant T.J. Bean made numerous statements to their TCPD and GCSO co-workers about the charged offenses, and other criminal investigations into GCSO involved incidents. These statements include admissions of guilt for assaulting victims C.G. and F.M., euphemized descriptions of their physical interactions with C.G.

and F.M., and statements placing blame for the victims' injuries on the car wrecks or other law enforcement personnel. Both defendants also made assertions to co-workers that they were worried about the federal investigation into the charged incidents, and other, incidents involving GCSO personnel. Lastly, law enforcement officers who witnessed the charged assaults will testify about the defendants' instructions not to record or report excessive force on other occasions, and the defendants' expressed intent to use excessive force on other occasions influenced the officer-witnesses' conduct on scene and after, when deciding whether, how, and to whom to report the excessive force of their superior officers, defendant Tony Bean and defendant T.J. Bean. Finally, both Tony Bean and T.J. Bean submitted to voluntary, non-custodial interviews with the FBI and Tennessee Bureau of Investigation. While the charged conduct was not discussed, defendants' statements from the interviews are still admissible as statements of a party-opponent. Defendants Tony Bean and defendant T.J. Bean also made numerous statements to their TCPD and GCSO co-workers about the charged offenses, and other criminal investigations into GCSO-involved excessive force incidents.

Each defendant submitted, through counsel, an unsolicited "written proffer" to the government before they were indicted. These documents, written by the respective attorneys for the defendants, describe the defendants' recollections of the arrests.

On July 24, 2019, the grand jury returned an indictment charging defendant Tony Bean with four counts of violating 18 U.S.C. § 242 by twice using unreasonable force against arrestee C.G. and twice using unreasonable force against arrestee F.M., all while acting under color of law. The indictment also charges defendant T.J. Bean with one count of violating 18 U.S.C. § 242 by using unreasonable force against F.M. Trial in this matter is set for January 14, 2020.

**ARGUMENT**

**I.      Motion to Exclude Evidence of the Victims' Bad Character or Conduct**

The United States moves this Court to exclude from trial evidence of, or reference to, either

victim C.G. or victim F.M.'s criminal convictions and specific instances of bad conduct unrelated

to the charged incidents.   Such evidence would constitute improper character evidence under

Federal Rules of Evidence 404(a), 404(b), and 405(a).   Additionally, the Court should exclude

such evidence as unfairly prejudicial under Rule 403.

**A.      Evidence of the Victims' Prior Convictions is Inadmissible Unless and Until
the Victims Testify.**

Defendants Tony Bean and T.J. Bean should be precluded from introducing evidence of

any prior convictions of either F.M. or C.G. as impeachment unless and until either F.M or C.G.

testifies.   Fed. R. Evid. 608(a); *See Old Chief v. United States*, 519 U.S. 172, 176 n.2 (1997)

(explaining prior convictions may not be admitted for impeachment if subject does not testify);

*Luce v. United States*, 469 U.S. 38, 43 (1984) ("[T]o raise and preserve for review the claim of

improper impeachment with a prior conviction, a defendant must testify.").   Rule 609 generally

permits impeachment with any conviction from the past ten years if it is for a "crime punishable

by death or imprisonment for more than one year," or for any crime that involves dishonesty or a

false statement.   *See* Fed. R. Evid. 609.   The Rule governs admission of evidence of *convictions*

only, and is inapposite when there has been no conviction.[1]   *See United States v. Edgecombe*, 107

F. App'x 532 (6th Cir. 2004) (a witness's prior arrest for domestic violence could not be used to

---

[1] Both C.G. and F.M have a number of prior arrests, all of which have been disclosed to the
defense.   As these arrests did not result in convictions, they do not form the proper basis for
impeachment under Rule 609, even if C.G or F.M. should testify.

4

impeach him on cross-examination, where witness had not been convicted of the offense) (emphasis added).

In the Sixth Circuit, the propriety of admitting prior convictions is subject to balancing the following factors: "(1) the impeachment value of the prior crime, (2) the point in time of the conviction and the witness' subsequent history, (3) the similarity between the past crime and the charged crime, (4) the importance of the defendant's testimony, and (5) the centrality of the credibility issue." *United States v. Meyers*, 952 F.2d 914, 916-17 (6th Cir. 1992), citing *Gordon v. United States*, 383 F.2d 936, 940 (D.C. Cir. 1967) (internal citations omitted). The Court affirmatively held that "in order to admit impeaching evidence of a prior conviction under Rule 609, a court must make an on-the-record finding based on the facts that the conviction's probative value substantially outweighs its prejudicial impact." *Meyers*, 952 F.2d at 916-17.

When evidence of a prior conviction is admitted, the evidence is limited to eliciting the charge, the date, and the disposition. *See Kennedy v. City of Zanesville,* No. 2:03–cv–1047, 2008 U.S. Dist. LEXIS 38409, at *13, (S.D. Ohio 2008) ("[F]or purposes of challenging a witness's propensity for truth and veracity opposing parties cannot harp on a witness's past crimes and in fact can elicit no more than the crime charged, the date, and the disposition.") (unpublished) quoting *Gora v. Costa,* 971 F.2d 1325, 1330 (7th Cir. 1992)).

F.M. has three prior convictions, all of which have been disclosed to the defense. All of three of these convictions are more than ten years old and, therefore, are admissible impeachment only if its "probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect." Fed. R. Evid. 609(b). Under the balancing test prescribed by the Sixth Circuit in *United States v. Meyers*, 952 F.2d 914 (6th Cir. 1992), described in detail above, the convictions have minimal probative value because of their age. Therefore, the probative value

does not outweigh their prejudicial effect. Accordingly, even if F.M. should testify at trial, the Court should exclude any reference to, or admitting any evidence of, victim F.M.'s criminal history unless and until he testifies.

C.G. has many prior convictions, all of which have been disclosed to the defense. His three convictions which have occurred in the past 10 years are misdemeanors, and are therefore admissible impeachment only if their "probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect." Fed. R. Evid. 609(b). Under the balancing test prescribed by the Sixth Circuit in *United States v. Meyers*, 952 F.2d 914 (6th Cir. 1992), described in detail above, the probative value of the convictions is minimal due to their age. In 2008, C.G. was convicted of four misdemeanor theft convictions and had his probation for three misdemeanor theft convictions revoked. These convictions, however, are inadmissible impeachment evidence because they were crimes of stealth, not of dishonesty. *See United States v. Washington*, 702 F.3d 886, 893–94 (6th Cir. 2012) (holding that a theft conviction was inadmissible because it was a crime of stealth not involving misrepresentation or fraud); *see also United States v. Scisney,* 885 F.2d 325, 326 (6th Cir.1989) (holding that a theft was "not the type of conviction involving dishonesty or false statement anticipated by the rule."). Under the balancing test prescribed in *Meyers*, the minimal probative value of these convictions does not outweigh their prejudicial effect. Accordingly, even if C.G. testifies at trial, the Court should exclude any reference to these more recent convictions.

## B. Evidence of the Victim's "Bad" Character Is Inadmissible Under Rule 404(a).

Under the Federal Rules of Evidence, a defendant may not introduce evidence of a victim's character other than evidence that relates to a "pertinent trait of character." Fed. R. Evid. 404(a)(2). Thus, a defendant does not have carte blanche to attack the character of the victim. Rather, as with

6

evidence related to character of the accused, the character traits of the victim must be relevant to the issues before the jury in order for such evidence to be admitted. In this case, therefore, defendants Tony Bean and T.J. Bean must identify specific traits of the victims and the Court must then determine whether those identified traits are pertinent to issues in the case, and not unfairly prejudicial. *See United States v. Mack*, 258 F.3d 548, 552-53 (6th Cir. 2001). To the extent defendants Tony Bean and T.J. Bean seek to introduce any such evidence here, the Court should exclude the evidence because the defendants cannot meet this pertinence test.

    1.  <u>Character for Violence</u>

Defendants Tony Bean and T.J. Bean should not be permitted to claim that either victim has a character for violence because neither defendant has claimed that he acted in self-defense when he used force on the victim. Neither defendant has even admitted using force. Further, law enforcement officers who were present for the events on August 10, 2014, will testify that just before C.G. was punched by defendant Tony Bean the first time, he was handcuffed and not physically aggressive. When he was punched by defendant Tony Bean a second time, C.G. was handcuffed and seated in the back of a locked patrol vehicle. Similarly, law enforcement officers who were present for the events on December 30, 2017, will testify that, just before defendant Tony Bean assaulted F.M. the first time, multiple law enforcement officers were around F.M. and were placing him in handcuffs. When defendant Tony Bean punched F.M. a second time, law enforcement officers will testify that F.M. was handcuffed, and compliant. When defendant T.J. Bean punched F.M., law enforcement officers will testify that F.M. was handcuffed, compliant, and seated in the back of a patrol vehicle.

Unless and until new eyewitnesses materialize in support of any claim of either defendant that he acted in self-defense, evidence of either of the victims' supposed character trait for violence

is not pertinent and falls outside Rule 404(a)(2)'s exception. *See United States v. West*, No. 06-20185, 2009 WL 2026322, at *16 (E.D. Mich. July 8, 2009) (refusing to admit evidence of victim's character under Rule 404(a)(2) because the defendant did not argue self-defense) (citing *United States v. Gregg*, 451 F.3d 930, 933 (8th Cir. 2006) ("A defendant can introduce evidence of a victim's violent character to establish conformity therewith in homicide cases where self-defense is raised.")); *see also United States v. Hillsberg*, 812 F.2d 328, 334 (7th Cir. 1987) (finding that the victim's propensity for violence was not pertinent because defendant did not claim he was provoked or acted in self-defense).

      2.  <u>Character for Truthfulness</u>

Defendants Tony Bean and T.J. Bean should be precluded from attacking the victims' character for truthfulness, unless and until either victim testifies at trial. Rule 404(a)(3) states that Rules 607, 608, and 609 govern evidence relating to the character of a witness. *See* Fed. R. Evid. 404(a)(3). Rule 608, in turn, authorizes the use of character evidence to support or attack a witness' character for truthfulness. *See* Fed. R. Evid. 608(a). A person's character for truthfulness is only subject to attack, however, if he or she becomes a witness. *See id.*; *United States v. Nance*, 561 F.2d 763, 771 (9th Cir. 1977). As a result, truthfulness would not be a pertinent character trait in this case if neither F.M. nor C.G. testify because, absent such testimony, the credibility of F.M. and C.G. is irrelevant. Accordingly, the Court should preclude defendants Tony Bean and T.J. Bean from attacking the credibility of F.M. or C.G., and from referencing prior acts of dishonesty, unless and until F.M. or C.G. testify.

    **C.    Rule 403 Bars Evidence of the Victims' Character or "Bad" Acts.**

 The prior bad acts or character of either victim is irrelevant to the trial of defendants for assaulting the victims. Fed. R. Evid. 401. To the extent that evidence regarding the victim's prior

bad acts or character is otherwise admissible, it should be excluded under Fed. R. Evid. 403. Rule 403 states that evidence of a pertinent character trait of a victim must be excluded if its probative value is substantially outweighed by the "danger of unfair prejudice, confusion of the issues, or misleading the jury." Fed. R. Evid. 403. Unfair prejudice under the rule refers to evidence that "tends to suggest decision on an improper basis." *United States v. Newsom*, 452 F.3d 593, 604 (6th Cir. 2006) (internal quotations omitted).

Character evidence relating to a victim is particularly susceptible to such prejudice because of the potential that it will be used simply to tarnish a victim by suggesting a propensity to commit bad acts, thus encouraging jury nullification. *See, e.g.*, *U.S. v. Gibbs*, 797 F.3d at 425; McCormick on Evidence § 193 at 572 (Cleary ed. 1984) (explaining that character evidence relating to a victim is disfavored because "[l]earning of the victim's bad character could lead the jury to think the victim merely 'got what he deserved' and to acquit for that reason."). Thus, even where a character trait is pertinent, a court may exclude evidence of an adverse trait pursuant to Rule 403. *See, e.g.*, *United States v. Milk*, 447 F.3d 593, 600-01 (8th Cir. 2006) (affirming exclusion of testimony regarding victim's prior stabbing offense under Rule 403 because of "significant risk of mini-trial" and lack of probative value); *United States v. Schatzle*, 901 F.2d 252, 256 (2nd Cir. 1990) (affirming exclusion in excessive force trial of testimony about victim's involvement in prior altercation because the risk of confusion of issues substantially outweighed the probative value); *cf. United States v. Richardson*, 793 F.3d 612, 627-28 (6th Cir. 2015) (finding that, under Rules 403 and 608(b), the trial court properly excluded cross examination into a judicial finding that a government witness was not credible in a prior proceeding because inquiry into the circumstances of that proceeding would require "detailed testimony regarding an entirely collateral matter in

order to assess its probative value.  This type of collateral 'mini-trial' is precisely what Rule 608(b) is intended to prevent.").

In accordance with these principles, F.M. and C.G.'s criminal history, and any underlying misconduct, even if deemed relevant, should be excluded under Rule 403 because the nominal probative value of such evidence is far outweighed by the danger of unfair prejudice, confusing the issues, and misleading the jury.  Reference to such evidence would only serve the improper purpose of appealing to the emotions of the jury in an attempt to make the jury dislike the victim and acquit for that reason alone.

Rule 403 balancing weighs particularly against introducing character or bad act evidence in this case.  The testimony from multiple other officers who were present, and will testify about the conduct they witnessed at both scenes, obviates the need to rely on amorphous character and prior-bad-act evidence to assess whether defendant Tony Bean or T.J. Bean's actions were justified.  Any remote additional probative value of such evidence is strongly outweighed by the risk of unfair prejudice and the costs to judicial economy – including occupying the jury's time and attention – of focusing proceedings on unrelated incidents.  Accordingly, Rule 403 provides a further basis for excluding evidence of F.M. and C.G.'s character, prior acts, or criminal convictions.

### D.     Evidence of the Victims' Prior Bad Acts Is Inadmissible Under Rule 404(b).

Neither defendant has claimed that he used force on the victims in response to a threat posed by the victims.  In fact, neither defendant reported his use(s) of force at all.  We expect that the defense theory will be that the defendants never used force, not that they were justified in using it.  Under this defense theory, evidence of prior bad acts (either before or during this incident) is wholly irrelevant and offered simply for purposes of nullification.  As such, neither defendant

introduce evidence of either victim's specific, past bad acts or crimes to support an argument that the victim acted aggressively during the incidents on August 10, 2014, or December 30, 2017, respectively.    Rule 404(b) specifically precludes the admission of evidence of other crimes, wrongs, or acts "to prove the character of a person in order to show action in conformity therewith." Fed. R. Evid. 404(b); *United States v. Clark*, 377 F. App'x. 451, 459 (6th Cir. 2010) (affirming exclusion of evidence of victim's prior convictions for violent felonies and noting that "Rule 404(b)'s prohibition on using evidence of past crimes to show propensity is clear").  This Rule allows the introduction of such evidence only where it is offered "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id.; see also U.S. v. Gibbs*, 797 F.3d 416, 425 (6th Cir. 2015) (finding that testimony regarding the defendant's role in an uncharged drive-by-shooting was inadmissible bad character evidence in a felon in possession of ammunition case).

In this case, reference to victim C.G.'s conduct prior to and during the arrest and his prior convictions may be permissible, subject to Rule 403 balancing, only if defendant Tony Bean testifies that he was aware of specific acts at the time of the charged conduct, and that such actual knowledge had an impact on his mental state on the two occasions he punched C.G. in the face. Based upon his written proffer, defendant Tony Bean has not claimed that he used force because of any specific acts by C.G, therefore evidence of any prior bad acts by C.G. is inadmissible.  Even if the defendant takes the stand and states that he was aware of certain past conduct by C.G., and that this knowledge shaped his use of force response, he may not introduce extrinsic evidence of bad acts to support his claim.  *See Gibbs*, 797 F.3d at 425.

Similarly, reference to victim F.M.'s conduct prior to and during the arrest and his prior convictions may be permissible, subject to Rule 403 balancing, only if defendant Tony Bean or

11

defendant T.J. Bean testifies that he was aware of specific acts at the time of the charged conduct, and that such actual knowledge had an impact on his individual mental state on the occasions they punched F.M. in the face. Based upon their written proffers, neither defendant Tony Bean nor defendant T.J. Bean has claimed that he used force because of any specific acts by F.M., therefore evidence of any prior bad acts by F.M. is inadmissible. Even if a defendant takes the stand and states that he was aware of certain past conduct by F.M. and that this knowledge shaped his use of force response, he may not introduce extrinsic evidence of bad acts to support his claim. *See Gibbs*, 797 F.3d at 425. Accordingly, Rule 404(b) precludes defendant Tony Bean and defendant T.J. Bean from introducing any bad acts or crimes of C.G. or F.M. in this case.

### E. Under Rule 405, Any Admissible Character Evidence Must Be Limited in Form to Reputation and Opinion Testimony.

Even if evidence of the victims' prior bad acts were indicative of a pertinent character trait and otherwise admissible under Rule 403, the form of that evidence would be governed by Federal Rule of Evidence 405(a), which limits such evidence to "testimony as to reputation or by testimony in the form of an opinion." Fed. R. Evid. 405(a). That is, a defendant is not permitted to offer proof of specific instances of conduct in keeping with the character trait. Fed. R. Evid. 405(a); *Michelson v. United States*, 355 U.S. 469, 477 (1948). This ban applies even where the evidence purports to be illustrative of the victim's character for violence or aggression, and is otherwise admissible. *See Clark*, 377 F. App'x at 458 (affirming exclusion of testimony about specific incidents and explaining that, "[a]t best, [the defendant] was limited to offering reputation and opinion evidence to show that [the victim] had a propensity toward violence"); *Gregg*, 451 F.3d at 934-35 (affirming the district court's exclusion of specific instances of a victim's violent conduct being offered to show the victim was the initial aggressor). Moreover, neither victim's propensity for violence is an essential element of the charges in this case, nor has either defendant

ever made a self-defense claim, meaning that Rule 405(b)'s exception for specific-act evidence does not apply. *See United States v. Seymour*, 468 F.3d 378, 387 (6th Cir. 2006) (evidence of the victim's character was not admissible under Rule 405(b) because it was not an essential element of defendant's aggravated sexual abuse charge); *United States v. Keiser*, 57 F.3d 847, 856 (9th Cir. 1995) (holding that the victim's character for violence is not an essential element of defendant's justification defense). Accordingly, defendants Tony Bean and T.J. Bean should not be allowed to introduce evidence of F.M or C.G.'s specific acts of bad conduct under Rule 405.

## II. Motion to Exclude Evidence of the Defendants' "Good" Character or Conduct.

The Court also should exclude from trial evidence of, or reference to, general good character and specific instances of good conduct, including evidence of awards, commendations, recognition, or good acts by defendants Tony and T.J. Bean. Such evidence would constitute improper character evidence under Fed. R. Evid. 404.

Federal Rule of Evidence 404 generally prohibits the introduction of evidence of a person's character to prove that the person acted in conformity with that character. *See* Fed. R. Evid. 404(a)(1) & (b)(1). The Rule provides an exception that permits a defendant to offer evidence of his character only if it relates to a "pertinent" character trait. *See* Fed. R. Evid. 404(a)(2)(A); *United States v. Silber*, 456 F. App'x. 559, 562 (6th Cir. 2012); *United States v. Camejo*, 929 F.2d 610, 613 (11th Cir. 1991). Here, any evidence of general diligence, attendance, or general "good character" for the defendants is not pertinent to the excessive force allegations of the present case. The Court should thus exclude any such evidence as irrelevant.

In particular, defendant Tony Bean should be barred from offering any evidence that he was a dedicated or competent Police Chief with the Tracy City Police Department, Chief Deputy with the Grundy County Sheriff's Office, or officer with any other law enforcement agency

13

because such evidence is too general to be relevant to the excessive force allegations in this case. Similarly, defendant T.J. Bean should be barred from offering any evidence that he was a dedicated or competent Sergeant with the Grundy County Sheriff's Office or any other law enforcement agency because such general evidence is irrelevant to the specific assaults alleged in this case. Courts consistently preclude law enforcement defendants from offering such evidence, including evidence of commendations and awards, on relevance grounds. *See, e.g.*, *United States v. Washington*, 106 F.3d 983, 999-1000 (D.C. Cir. 1997) (holding that a police officer's commendations were not admissible because defendant's "dedication, aggressiveness and assertiveness" in investigating drug dealing and carjacking was not "pertinent" to his bribery, conspiracy, drug, or firearms charges); *United States v. Nazzaro*, 889 F.2d 1158, 1168 (1st Cir. 1990) (holding that the trial court properly excluded evidence of a police officer's prior commendations because "the traits which they purport to show – bravery, attention to duty, perhaps community spirit – were hardly 'pertinent' to the crimes [of perjury and conspiracy to commit mail fraud] of which [the defendant] stood accused"); *United States v. Barry*, 814 F.2d 1400, 1403-1404 (9th Cir. 1987) (holding a security patrol officer's letters of commendation were not pertinent under Rule 404(a) and were hearsay). General evidence of the defendant's "good" conduct, including evidence offered to prove professionalism, dedication, or other similar traits, is likewise irrelevant to the civil rights charges at issue here. Such evidence says nothing about whether defendants Tony Bean and T.J. Bean willfully deprived either victim of his right to be free from unreasonable force by assaulting them. *See Camejo*, 929 F.2d at 613.

Even if evidence of either defendant Tony Bean or defendant T.J. Bean's good character was pertinent, the form of that evidence – as with any admissible evidence of the victims' character – would be limited to "testimony as to reputation or by testimony in the form of an opinion." Fed.

14

R. Evid. 405(a); *Michelson*, 355 U.S. at 477.   Character evidence in the form of testimony regarding specific instances of conduct is permitted only where the character trait at issue is "an essential element of a charge, claim, or defense." Fed. R. Evid. 405(b).  As no character trait at issue here forms an element of the charges before this Court, testimony about specific instances of conduct should be inadmissible.  Indeed, such an examination of the character traits of either defendant would divert the trial from an examination of the respective acts of the defendants charged in this case to a trial of the character in general of either or both defendants.[2]  Therefore, evidence of the general good character or specific acts of good conduct of either defendant Tony Bean or T.J. Bean should be excluded.

**III.    Motion to Prohibit Reference to Equally Available Witnesses Whom the Parties Decline to Call to Testify at Trial.**

The government moves for the Court to prohibit the parties from making reference to, or arguments about, the failure to call witnesses who were equally available to both parties.  "It is well settled that it is impermissible to draw any inference from a party's failure to call witnesses that were equally available to both sides." *United States v. Iredia*, 866 F. 2d 114, 118 (5th Cir. 1989).  "Where witnesses are equally available to either party, no adverse inference may be drawn from the failure of one party to call them." *Illinois Cent R. Co. v. Staples*, 272 F.2d 829, 834 (8th Cir. 1959); *see also General Dynamics Corp. v. Selb Mf'g Co.*, 481 F.2d 1204, 1217 (8th Cir. 1983).  In *Walker v. United States*, 489 F. 2d 714 (8th Cir. 1974), the Eighth Circuit addressed the trial court's refusal to give an instruction about the prosecution's failure to produce a witness.  Affirming the trial court's decision not to give such an instruction, the court held, "[Walker] made

---

[2] Where a defendant is permitted to offer reputation and opinion testimony regarding a pertinent character trait, the government is permitted under Fed. R. Evid. 405(a) to cross-examine the character witnesses about whether they are aware of specific acts of misconduct indicating a contrary character. *See Michelson*, 355 U.S. at 479; *United States v. Moore*, 604 F. App'x. 458, 462 (6th Cir. 2015).  Accordingly, should the Court allow introduction of reputation or opinion evidence, the government would conduct such cross examination.

no adequate showing that the government at the time of trial possessed the sole power to produce [the person at issue] as a witness.  Moreover, [Walker] did not request that the government make [this person] available as a witness, either at the time of trial or earlier." *Id*. at 716.  Furthermore, the court cited E. Devitt & C. Blackmar, Federal Jury Practice and Instructions § 11.33 (1970), which states, "[i]f it is peculiarly within the power of either the prosecution or the defense to produce a witness who could give material testimony on an issue in the case, failure to call that witness may give rise to an inference that his testimony would be unfavorable to that party. However, no such conclusion should be drawn by [the jury] with regard to a witness who is equally available to both parties, or where the witness' testimony would be merely cumulative.  The jury will always bear in mind that the law never imposes on a defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence." *Id*. at 716 n.1.  As all of the witnesses in this case are available to both parties, commenting on the failure to call any one of a number of witnesses would be improper and should not be permitted.

**IV.      Motion to Allow the Government to Introduce Defendants' Statements into Evidence and Prohibit Defendants From Eliciting Their Own Statements Without Testifying.**

Prior out-of-court statements that defendants Tony Bean and Defendant T.J. Bean made to law enforcement and to other witnesses are admissible by the government in the government's case-in-chief as evidence of the charged offenses and as admissions of a party opponent.  *See* Fed. R. Evid. 801(d)(2).  By contrast, neither defendant Tony Bean nor defendant T.J. Bean may introduce his own out-of-court self-serving statements through witnesses other than himself.  The government will seek to admit statements made by defendants to the F.B.I., their colleagues, their former colleagues, and other witnesses.

16

**A. Defendants' Statements At Voluntary Interviews Are Admissible in the Government's Case-In-Chief.**

The government may admit a defendant's statements in its case-in-chief as admissions of a party opponent. *See* Fed. R. Evid. 801(d)(2); *Stalbosky v. Belew*, 205 F.3d 890, 894 (6th Cir. 2000) ("Under Rule 801(d)(2)(A), a party's statement is admissible as non-hearsay only if it is offered against that party."); *United States v. Ortega*, 203 F.3d 675, 682 (9th Cir. 2000) ("The self-inculpatory statements, when offered by the government, are admissions by a party-opponent and therefore not hearsay, but the non-self-inculpatory statements are inadmissible hearsay.") (citations omitted); *United States v. Spence*, 742 F.3d 77, 81 (3d Cir. 2014) (finding that admission of statements made by a non-testifying co-defendant in joint criminal trial was proper because statements were admitted against co-defendant as non-hearsay statements of a party opponent). Accordingly, the statements that defendants Tony Bean and T.J. Bean made to numerous witnesses in the government's case are admissible against the particular defendant making the statement as admissions by a party opponent.

Statements made by each defendant also are admissible against him individually as evidence of his own willfulness. Willfulness is an element of 18 U.S.C. § 242. To establish a violation of Section 242, the government must prove that each defendant, while under color of law, willfully deprived a person of a protected right. *See* 18 U.S.C. § 242; *United States v. Wilson*, 344 Fed. Appx. 134, 142 n.6 (6th Cir. 2009) (citation omitted). To prove willfulness, the government must establish that the defendant knew that his conduct was wrong, but he did it anyway. Here, there is ample evidence from defendant Tony Bean's past statements indicating that he understood that his uses of force on C.G. and F.M. were wrong. For example, defendant Tony Bean did not report his uses of force on C.G., but did brag about punching C.G. and breaking his ring when he did so. Similarly, defendant Tony Bean did not report his uses of force on F.M.

17

and falsely provided alternative explanations for how he was injured. All of the statements, discussed herein, made by the Tony Bean are admissible to establish willfulness as an element of the offense charged in Counts One, Two, Four, and Five. *See United States v. Gonzales*, 436 F.3d 560, 571 (5th Cir. 2006) (finding evidence of defendant's willfulness in defendant's false statements that his discharge of pepper spray was accidental).

Additionally, defendant T.J. Bean's past statements indicate that he understood that his use of force on F.M. was wrong. But, defendant T.J. Bean also did not report his use of force on F.M. All of the statements, discussed *supra*, made by the defendant T.J. Bean are admissible to establish willfulness as an element of the offense charged in Count Three. *Id.* These statements can also can be introduced to establish that the defendants willfully deprived the victim of his civil rights as charged in Counts One through Five. Accordingly, the statements defendants Tony Bean and T.J. Bean made in interviews with the FBI, and to other witnesses, are admissible in the government's case as statements of a party opponent.

## B. Defendants Should Be Precluded From Eliciting Their Own Out-of-Court Hearsay Statements Without Testifying.

The government anticipates that defendant Tony Bean and defendant T.J. Bean may attempt to improperly introduce portions of their own out-of-court, exculpatory statements through witnesses other than themselves. However, it is well-settled that, under Federal Rule of Evidence 801(d)(2), a defendant may not seek to use other witnesses to offer into evidence his own prior, out-of-court statements. When offered by the declarant, such statements constitute inadmissible hearsay because they are offered by, not against, the party to whom the statement is attributable. *See* Fed. R. Evid. 801(d)(2); *Stalbosky*, 205 F.3d at 894 (finding "a party's statement is admissible as non-hearsay only if it is offered against that party"); *Ortega*, 203 F.3d at 682 ("The self-inculpatory statements, when offered by the government, are admissions by a party-opponent and

18

therefore not hearsay, but the non-self-inculpatory statements are inadmissible hearsay.") (citations omitted).

A defendant may not introduce such hearsay statements either by eliciting them through a defense witness or by cross-examining government witnesses. *See United States v. Ford*, 761 F.3d 641, 651-52 (6th Cir. 2014) (Rule 801(d)(2) does not "extend to a party's attempt to introduce his or her *own* statements through the testimony of other witnesses," including on cross examination) (emphasis in original). In other words, Rule 801(d)(2) precludes defendant Tony Bean and defendant T.J. Bean from introducing their own individual out-of-court statements to the jury without subjecting themselves to cross-examination. *See United States v. McDaniel*, 398 F.3d 540, 545 (6th Cir. 2005) (affirming trial court's ruling precluding defendant from cross-examining postal inspector about statements he heard the defendant make). "Indeed, if such statements were deemed admissible under Rule 801(d)(2), parties could effectuate an end-run around the adversarial process by, in effect, testifying without swearing an oath, facing cross-examination, or being subjected to first-hand scrutiny by the jury." *Id*.

The rule of completeness provides a very limited exception to this provision. This common law doctrine is codified in Federal Rule of Evidence 106, which states that, "if a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction . . . of any other part . . . that in fairness ought to be considered at the same time." Fed. R. Evid. 106. Although Rule 106 applies only to written or recorded statements, the Sixth Circuit has stated that Rule 611(a) applies the same fairness standard to conversations. *See United States v. Holden*, 557 F.3d 698, 705 (6th Cir. 2009). The rule of completeness "is a common-law doctrine [that] does not outweigh the hearsay rules." *Shaver*, 89 F. App'x at 533; *see also id*. ("Exculpatory hearsay may not come in solely on the basis of completeness.") (affirming the refusal to allow a defendant

to elicit exculpatory portions of a statement during cross examination of a government witness); *United States v. Ramirez-Perez*, 166 F.3d 1106, 1112 n.7 (11th Cir. 1999) (finding the defendant was not entitled to cross-examine an agent about exculpatory portions of statement even though the agent testified about inculpatory portions of the statement).

Rule 106, however, does not give a defendant the unlimited right to introduce other portions of statements that are inadmissible hearsay. Rather, a defendant may elicit portions of his own statements only "to correct a misleading impression created by the introduction of part of a writing or conversation by introducing additional parts of it necessary to put the admitted portions in proper context." *Holden*, 557 F.3d at 705; *see also United States v. Costner*, 684 F.2d 370, 373 (6th Cir. 1982) ("Rule 106 is intended to eliminate the misleading impression created by taking a statement out of context. The rule covers an order of proof problem; it is not designed to make something admissible that should be excluded."); *United States v. Shaver*, 89 F. App'x. 529, 533 (6th Cir. 2004). In other words, absent a need to admit some additional portion of a defendant's statement to correct a misleading impression, a defendant's out-of-court statements remain inadmissible hearsay.

Accordingly, the government may offer portions of the defendant Tony Bean and T.J. Bean's statements without opening the door to the introduction of other portions of those statements, either directly, or on cross-examination, because the statements the government intends to offer place the defendants' statements in their proper context and require no further explanation or clarification to be fairly understood. For example, defendant Tony Bean's stand-alone statement to one arrestee, "you almost hit my [expletive] wife," offered in the context of evidence about the vehicle pursuit and arrest in this case, will not need further explanation to be

understood.  Similarly, defendant T.J. Bean admonishing F.M. about hitting his "daddy" with his vehicle do not implicate the rule of completeness.

The government thus requests that the Court prohibit defendants Tony Bean and Defendant T.J. Bean from eliciting their own self-serving exculpatory statements from witnesses, including through cross-examination of government witnesses.[3]

## CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court:  (1) exclude any improper reference to or evidence of the victims' criminal history character, or bad acts; (2) exclude any improper reference to or evidence of the defendant's character; (3) prohibit reference to equally available witnesses whom the parties decline to call to testify at trial; (4) allow the government to introduce the defendant's prior out-of-court statements and prohibit the defendant from introducing his own hearsay statements through other witnesses or by eliciting them on cross examination of government witnesses.

Date: December 31, 2019

Respectfully Submitted,

ERIC S. DREIBAND
ASSISTANT ATTORNEY GENERAL

*s/ Rebekah J. Bailey*
Rebekah J. Bailey
Trial Attorney
Civil Rights Division, Criminal Section
U.S. Department of Justice
950 Pennsylvania Ave. NW

---

[3] If a defendant successfully offers such a statement, however, his credibility then may be challenged "by any evidence which would be admissible for those purposes if the declarant had testified as a witness."  Fed. R. Evid. 806.  Accordingly, if either Defendant wants to introduce his own statements beyond those strictly necessary for clarification, he must first testify and face cross-examination.

21

Washington, DC 20530
202-307-6523 phone
202-514-6588 fax
Rebekah.Bailey@usdoj.gov


J. DOUGLAS OVERBEY
UNITED STATES ATTORNEY

_s/ James T. Brooks_
James T. Brooks, BPR #021822
Assistant United States Attorney
100 E. 11th Street
Chattanooga, TN 37402
423-752-5140
James.Brooks@usdoj.gov